[Cite as *Crosby v. Radenko*, 2011-Ohio-4662.]


IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

JESSICA CROSBY                    :

     Plaintiff-Appellant          :     C.A. CASE NO. 24343

vs.                               :     T.C. CASE NO. 09CV9538

DZAMIC RADENKO et al.            :     (Civil Appeal from
                                         Common Pleas Court)
     Defendants-Appellees         :

. . . . . . . . .

O P I N I O N

Rendered on the 16th day of September, 2011.

. . . . . . . . .

Timothy S. Chappars, Atty. Reg. No.0007122, P.O. Box 280, Xenia, OH 45385
     Attorney for Plaintiff-Appellant

Patrick McCaffrey, Atty. Reg. No.0067293; Audrey E. Varwig, Atty. Reg. No. 0073265, 2109 Stella Court, Columbus, OH 43215
     Attorneys for Defendants-Appellees

. . . . . . . . .

GRADY, P.J.:

{¶ 1} This is an appeal from a summary judgment for the defendant on the plaintiff's claim for personal injuries and property loss arising from a motor vehicle collision. The collision took place on Interstate Route 70, near the exit for

Englewood, Ohio, during the daylight hours. A tractor-trailer owned and operated by Unlimited Freight, Inc. was traveling in an eastbound direction when its driver, Dzamic Radenko, pulled to a stop on the berm of the right lane due to mechanical trouble of some sort. Whatever the difficulty was, Radenko subsequently attempted to reenter the same lane of travel. When he began his maneuvers to reenter his lane of travel, a passenger vehicle proceeding in the same lane of travel came to a stop behind the Unlimited Freight, Inc. tractor-trailer. Another tractor-trailer then came to a stop behind the passenger vehicle.

{¶ 2} Jessica Crosby was driving a Honda Civic eastbound in the same lane of travel when she came upon the line of vehicles stopped ahead of her. Unable to stop to avoid colliding with the tractor-trailer last in line, Crosby veered into the left-hand lane. She lost control of her vehicle, causing it to veer back into the right-hand lane and collide with the tractor-trailer owned by Unlimited Freight, Inc. The passenger vehicle and the other tractor-trailer that had stopped were not involved in the collision.

{¶ 3} Crosby commenced an action against Radenko and Unlimited Freight, Inc., on claims for relief for bodily injuries and property loss, alleging negligence on the part of Radenko and Unlimited Freight, Inc. in the operation of its tractor-trailer, and against

Unlimited Freight, Inc., in failing to train Radenko. Following responsive pleadings and depositions, the Defendants moved for summary judgment. The trial court granted that motion, relying on the rule of intervening/superseding negligence we applied in *Didier v. Johns* (1996), 114 Ohio App.3d 746. Crosby appeals.

ASSIGNMENT OF ERROR

{¶ 4} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN GRANTING APPELLEE UNLIMITED FREIGHT, INC.'S MOTION FOR SUMMARY JUDGMENT."

{¶ 5} In *Didier v. Johns*, we held that a plaintiff's negligence per se for a violation of the assured clear distance statute, combined with the lack of any negligence on the part of a third party involved in a collision, relieved a defendant of liability for his prior negligent act, under the doctrine of intervening/superseding cause. We believe that holding merits reexamination.

{¶ 6} An act or omission that falls below the particular standard of conduct required to satisfy a duty of care imposed by law is negligence. When that negligence proximately results in injuries and losses to other persons, the actor is legally liable to such persons in money damages in an amount that will compensate them for the injuries and losses each suffered.

{¶ 7} Evidence of negligence may be prima facie or per se.

When negligence is prima facie, the evidence of negligence is subject to rebuttal. When there is negligence per se, it is conclusive of that question. *Fightmaster v. Mode* (1928), 31 Ohio App.273.

{¶ 8} The distinction between negligence and negligence per se is the means and method of their ascertainment. "The former must be found by the jury from the facts, conditions, and circumstances disclosed by the evidence, while the latter is a violation of a specific requirement of law or ordinance, the only fact for determination by the jury being the commission or omission of the specific act inhibited or required." *Swoboda v. Brown* (1939), 129 Ohio St. 512, paragraph four of the Syllabus by the Court.

{¶ 9} "Where a legislative enactment imposes upon any person a specific duty for the protection of others, and his neglect to perform that duty proximately results in injury to such another, he is negligent per se or as a matter of law." *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, paragraph two of the Syllabus by the Court.

{¶ 10} The rule of *Eisenhuth* is subject to two qualifications. First, "[i]n order for the violation of a statute or ordinance to constitute negligence per se, the statute or ordinance violated must be a specific requirement to do or to omit to do a definite

act; the violation of a statute or ordinance prescribing merely a rule of conduct is not negligence per se." 70 Ohio Jurisprudence 3d Negligence, §56.

{¶ 11} Second, a finding of negligence per se "does not mean that (such) negligence was the sole proximate cause, or even a proximate cause, of the (event) that resulted in (the injury and loss.)" *Smiddy v. The Wedding Party, Inc*. (1987), 39 Ohio St.3d 35, 40. The issue is for the jury if reasonable minds could differ as to the proximate cause of that event. *Id*. Similarly, if the jury finds that the negligence per se and the negligence of another party were proximate causes of that event, "the issue of comparative negligence is for the jury." *Id*.

{¶ 12} The contributory fault of the plaintiff may be asserted as an affirmative defense in a negligence action. R.C. 2315.32(B). If established, the plaintiff's contributory fault does not bar the plaintiff from recovering damages that have directly and proximately resulted from the tortious conduct of one or more other persons, if the contributory fault of the plaintiff was not greater than the combined tortious conduct of all other persons from whom the plaintiff seeks recovery in the action and of all other persons from whom the plaintiff does not seek recovery in the action. R.C. 2315.33.

{¶ 13} The assured clear distance statute, R.C. 4511.21(A)

states:

{¶ 14} "No person shall operate a motor vehicle, trackless trolley, or streetcar at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions, and no person shall drive any motor vehicle, trackless trolley, or streetcar in and upon any street or highway at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead."

{¶ 15} Violation of the assured clear distance statute, R.C. 4511.21, is negligence per se. *Piper v. McMillan* (1999), 134 Ohio App.3d 180. "Violation of the statute and a finding of negligence per se depends on whether there is evidence that the driver collided with an object which (1) was ahead of him in this path of travel, (2) was stationary or moving in the same direction as the driver, (3) did not suddenly appear in the driver's path, and (4) was reasonably discernible." *Junge v. Brothers* (1985), 16 Ohio St.3d 1, 3. "Where conflicting evidence is introduced as to any one of the elements necessary to constitute a violation of the (assured clear distance) statute, a jury question is created." *Tomlinson v. Cincinnati* (1983), 4 Ohio St.3d 66, 69.

{¶ 16} The trial court found that Plaintiff-Appellant Crosby was negligent per se because she violated the assured clear distance

statute. Crosby argues that the trial court erred in granting summary judgment for Unlimited Freight, Inc. and its driver, Radenko, because "[a] jury should have been permitted to find that [her] actions in taking emergency avoidance maneuvers were not negligent . . . ." A sudden emergency can relieve an actor of negligence per se. The trial court rejected that contention, relying on *Cox v. Polster* (1963), 174 Ohio St. 224, which held:

{¶ 17} "Where three motor vehicles are proceeding in the same direction in the same lane of traffic, the fact that the first car comes to a sudden stop causing the second car to swerve into another lane of traffic does not create a sudden emergency as to the third car so as to relieve the driver thereof from compliance with the assured-clear-distance-ahead statute in relation to the stopped first car." Syllabus by the Court.

{¶ 18} We agree with the trial court. R.C. 4511.21(A) imposed a duty on Crosby to maintain an assured clear distance between her car and the tractor-trailer immediately in front of her, which came to a stop in Crosby's lane of travel. That tractor-trailer did not suddenly appear in Crosby's path after returning in to the road. See: *Ziegler v. Wendel Poultry Services, Inc.* (1993), 67 Ohio St.3d 10. Neither was the tractor-trailer concealed by fog, as in *Ziegler*. Instead, it was reasonably discernible, having stopped in Crosby's path during daylight hours and absent

extraordinary weather conditions. *Piper v. McMillan*. The fact that Crosby could not see Unlimited Freight, Inc.'s tractor-trailer at the head of the line of vehicles is immaterial to Crosby's R.C. 4511.21(A) violation, notwithstanding the fact that it was Unlimited Freight, Inc.'s tractor-trailer that Crosby subsequently collided with. The trial court did not err when it held that Crosby was negligent per se in operating her vehicle as she did.

{¶ 19} The further issue to be determined is whether the trial court, having found Crosby negligent per se, erred when it granted summary judgment for Unlimited Freight, Inc. on the issue of proximate cause by applying our holding in *Didier v. Johns* with respect to the doctrine of intervening/superseding cause. Regarding that doctrine, in *Berdyck v. Shinde* (1993), 66 Ohio St.3d 573, the Supreme Court wrote, at 584-585:

{¶ 20} "[30] [31] The intervention of a responsible human agency between a wrongful act and an injury does not absolve a defendant from liability if that defendant's prior negligence and the negligence of the intervening agency co-operated in proximately causing the injury. If the original negligence continues to the time of the injury and contributes substantially thereto in conjunction with the intervening act, each may be a proximate, concurring cause for which full liability may be imposed. 'Concurrent negligence consists of the negligence of two or more

persons concurring, not necessarily in point of time, but in point of consequence, in producing a single indivisible injury.' *Garbe v. Halloran* (1948), 150 Ohio St. 476, 38 O.O. 325, 83 N.E.2d 217, paragraph one of the syllabus.

{¶ 21} "[32] [33] In order to relieve a party of liability, a break in the chain of causation must take place. A break will occur when there intervenes between an agency creating a hazard and an injury resulting therefrom another conscious and responsible agency which could or should have eliminated the hazard. *Hurt v. Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 323, 58 O.O. 119, 130 N.E.2d 824, paragraph one of the syllabus; *Thrash v. U-Drive-It Co.* (1953), 158 Ohio St. 465, 49 O.O. 402, 110 N.E.2d 419, paragraph two of the syllabus. However, the intervening cause must be disconnected from the negligence of the first person and must be of itself an efficient, independent, and self-producing cause of the injury."

{¶ 22} In *Hurt v. Charles J. Rogers Transportation Co.*, the manufacturer of forgings had negligently packaged them in a box. The box was given to a trucking company for shipment. Along the way, the box broke open. The truck driver discovered the problem and attempted to repair the box. The attempt failed and the box again broke open, allowing one of the forgings to crash through the windshield of a following car. The Supreme Court held that

the manufacturer, though it had negligently packed the forgings, was relieved of liability by the truck driver's intervening negligence. The court reasoned:

{¶ 23} "Where there intervenes between an agency creating a hazard and an injury resulting from such hazard another conscious and responsible agency which could or should have eliminated the hazard, the original agency is relieved from liability. A break in the chain of causation thereby takes place which operates to absolve the original agency." Paragraph one of the Syllabus by the court.

{¶ 24} In *Thrash v. U-Drive-It Co.*, the owner of a motor vehicle sold it to a dealer, who resold it to the plaintiff. The plaintiff was injured in an accident caused by a defect in the vehicle. He sued the manufacturer, the prior owner, and the used car dealer. The Supreme Court held that the prior owner was not legally liable, writing:

{¶ 25} "Where there intervenes between an agency creating a hazard and an injury resulting from such hazard another conscious and responsible agency which could or should have eliminated the hazard, the original agency is relieved from liability. A break in the chain of causation thereby takes place which operates to absolve the original agency.

{¶ 26} "* * *

{¶ 27} "Although a dealer in used motor vehicles is not an insurer of the safety of the vehicles he sells, he is generally under a duty to exercise reasonable care in making an examination thereof to discover defects therein which would make them dangerous to users or to those who might come in contact with them, and upon discovery to correct those defects or at least give warning to the purchaser. Such rule is of particular significance where the sale of such a vehicle is accompanied by representations or warranties as to its fitness for use." Paragraphs two and four of the Syllabus by the Court.

{¶ 28} *Hurt* and *Thrash* illustrate a significant point. The "agency" that intervenes between the negligence of a primary tortfeasor and the injuries that could result from that tortfeasor's negligence must have had a capacity to prevent that injury from occurring, and breached a duty to do so through the agency's own negligent act or omission. Several cases have applied that requirement to chain-reaction collisions involving multiple vehicles similar in their facts to *Didier v. Johns* and the present case.

{¶ 29} In *Shinaver v. Szymanski* (1984), 14 Ohio St.3d 51, a multi-vehicle accident occurred when Szymanski, the driver of the lead vehicle in a line of five vehicles, lost control and her vehicle came to rest after striking a guard rail. The drivers of two

passenger vehicles following behind the lead vehicle were able to stop, but a tractor-trailer next in line was not. The tractor-trailer collided with the vehicle in front of it, pushing it and then the vehicle second in line into the Szymanski's lead vehicle. The last vehicle in line, driven by Shinaver, struck the rear of the tractor-trailer. Shinaver was injured and his spouse was killed.

{¶ 30} Shinaver commenced an action for negligence and wrongful death against Szymanski and others allegedly at fault. The trial court granted summary judgment for the defendants on a finding that the plaintiff, Shinaver, was contributorily negligent in failing to maintain an assured clear distance ahead in violation of R.C. 4511.21(A), relieving the defendants of liability. The court of appeals affirmed. The Supreme Court reversed, in part, finding that the trial court erred in failing to apply the principles of comparative negligence required by statute.

{¶ 31} With respect to the drivers of the two passenger vehicles following behind the lead vehicle driven by Szymanski, both of which safely came to a stop, the Supreme Court held that neither driver was at fault because "[t]here was no evidence whatsoever that any course of conduct reasonably available to (them) could have prevented the accident in question, nor that their conduct had any causal connection with plaintiff's injuries or his wife's

death." *Id.*, at p. 54. Therefore, the summary judgment in their favor was affirmed. With respect to the driver of the tractor-trailer that struck the two passenger vehicles that had stopped, and the plaintiff, Shinaver, who struck the tractor-trailer, the Supreme Court held that both were negligent per se for violation of the assured clear distance statue, R.C. 4511.21(A). The Supreme Court further held:

{¶ 32} "Where the plaintiff driver is travelling immediately behind the defendant driver, and both parties are negligent *per se* for failing to maintain the assured clear distance ahead in violation of R.C. 4511.21, the question of whether the negligence of either party was the proximate cause of the ensuing collision, in which the plaintiff driver sustained personal injuries, is for jury determination. The defendant driver immediately ahead of plaintiff has no right to summary judgment." *Id.*, at p. 55.

{¶ 33} In *Shinaver*, the respective and proportionate negligences of the plaintiff and the driver of the tractor-trailer were necessarily to be weighed pursuant to R.C. 2315.34 on comparative negligence principles in determining the compensatory damages recoverable by the plaintiff from <u>all</u> defendants, including the defendant driver of the lead vehicle, Szymanski. The doctrine of intervening/superseding cause did not apply. The Seventh District Court of Appeals wrote: "The import of *Shinaver* is that

14

in a multivehicle collision case, the driver of the first or lead vehicle could be held liable for damages to vehicles following the driver if he/she was negligent." *Piper v McMillan* (1999), 134 Ohio App.3d 180, 194. Two cases cited for that proposition in *Piper*, both decisions of the Tenth District Court of Appeals, illustrate why the doctrine of intervening/superseding cause does not apply in that context.

{¶ 34} In *Grange Mutual Casualty Company v. Fleming* (1982), 8 Ohio App.3d 164, three vehicles were involved in a chain-reaction collision after the lead vehicle improperly came to a stop on a roadway, contrary to the directions from posted traffic signs. The next vehicle was able to come to a stop safely, but the third vehicle was not. It struck the second vehicle, pushing the second vehicle forward into the lead vehicle. The driver of the second vehicle was injured, and he commenced an action against the driver of the lead vehicle on a claim of negligence per se, for failing to conform to the traffic signs on the highway. The driver of the lead vehicle joined the driver of the third vehicle on a cross-claim, alleging negligence per se arising from an assured clear distance violation.

{¶ 35} The trial court in *Fleming* directed a verdict in favor of the driver of the third vehicle on the driver of the lead vehicle's cross-claim. The appellate court approved that holding,

but not the trial court's further holding that the negligence of the driver of the lead vehicle was not a proximate cause of the injuries suffered by the driver of the second vehicle, who was the plaintiff in the action. The court reasoned that, on the issue of foreseeability, reasonable minds could find that the driver of the lead vehicle "would anticipate that, although a vehicle immediately following him would be able to stop to avoid a collision, a third vehicle following the second vehicle would not be able to do so." *Id.*, at 167.

{¶ 36} The court in *Fleming* also rejected the view that the assured clear distance violation of the driver of the third vehicle was an intervening cause of the plaintiff's injuries that cut off the liability of the driver of the lead vehicle to the plaintiff. The court held that the negligence of the driver of the lead vehicle "set in motion the chain of events which ensued, and the causal connection was not broken by (the driver of the third vehicle's) negligence under the circumstances of this case. At least, reasonable minds could reach different conclusions on this issue." *Id.* The court reasoned that, viewing the evidence most strongly in favor of the plaintiff, reasonable minds could find that the drivers of the first and third vehicles were concurrent tortfeasors whose negligences proximately caused the injuries suffered by the driver of the second vehicle, the plaintiff in the action.

{¶ 37} The Tenth District addressed the issue again the following year in *Baum v. Augenstein* (1983), 10 Ohio App.3d 106. In that case, when Defendant Goebel drove his pickup truck onto Interstate 71 a cattle-feeder fell from the bed of the truck onto the roadway. Goebel's truck was followed by a line of vehicles, the first of which was able to stop without colliding with the feeder. The driver of the vehicle next in line, Plaintiff Baum, was able to stop her automobile without striking the first vehicle. A pickup truck driven by defendant Augenstein struck the rear of the Baum vehicle, pushing it into the rear of the first automobile.

{¶ 38} Baum commenced an action against Goebel and Augenstein. The trial court granted a directed verdict for Goebel on his contention that his negligence in not securing the feeder was not the proximate cause of Baum's injuries, those injuries having been caused by the intervening negligence of Augenstein. On appeal, the Tenth District reversed. The court wrote, at 107:

{¶ 39} "Construing the evidence most strongly in favor of plaintiffs, the negligence of Goebel and Augenstein combined to proximately cause plaintiffs' injuries. Reasonable minds could conclude that the chain of events set in motion by Goebel's negligence unfolded in rapid succession in a continuous and unbroken fashion, with a result that the causal connection was

not broken by Augenstein's negligence and he and Goebel were concurrent tortfeasors. Reasonable minds could reach different conclusions upon the issue."

{¶ 40} The holdings in *Fleming* and *Baum* illustrate a pertinent distinction with respect to the doctrine of intervening/superseding cause. In order to relieve an actor of liability, a subsequent force must not only actively operate to produce harm to another <u>after</u> the actor's negligent act has been committed: in addition, the force must be a superseding cause which by its intervention prevents the prior actor from being liable for the harm which his antecedent negligence is a substantial factor in brining about. Restatement of the Law Second, Torts §§ 440 and 441. The Restatement further provides, at § 442:

{¶ 41} "The following considerations are of importance in determining whether an intervening force is a superseding cause of harm to another:

{¶ 42} "(a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

{¶ 43} "(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

{¶ 44} "(c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

{¶ 45} "(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

{¶ 46} "(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

{¶ 47} "(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion."

{¶ 48} In *Baum*, at paragraph one of the syllabus, the court encapsulated these considerations in a simple formula: "A trial court errs in directing a verdict in favor of a defendant where reasonable minds could differ on the issue of proximate cause and conclude that the defendant and another were concurrent tortfeasors." And, "[c]oncurrent negligence consists of the negligence of two or more persons concurring, not necessarily in point of time, but in point of consequence, in producing a single indivisible injury." *Garbe v. Halloran* (1948), 150 Ohio St. 476, paragraph one of the syllabus.

{¶ 49} In *Didier v. Johns*, a motorcyclist was injured when he struck the rear of a school bus he was following after the school

bus came to a sudden stop to avoid colliding with a vehicle coming from the opposite direction that had crossed the center line into the path of the school bus after the driver of the vehicle fell asleep.  The motorcyclist commenced an action against the driver of the other vehicle.  The trial court granted summary judgment for the defendant.

{¶ 50} On appeal, we affirmed the summary judgment on findings that the plaintiff motorcyclist violated the assured clear distance statute and was negligent per se, and that the plaintiff motorcyclist was therefore 100% responsible for his injuries, despite the prior negligence of the defendant motorist, because the bus driver's non-negligent actions in stopping the bus broke the chain of causation.

{¶ 51} Our rationale in *Didier* was flawed.  "A break will occur when there intervenes between an agency creating a hazard and an injury resulting therefrom another conscious and responsible agency which could or should have eliminated the hazard."  *Berdyck v. Shinde*, at 585.  In *Didier*, the hazard was created when the motorist allowed his vehicle to cross into the path of the school bus.  If the school bus driver could or should have eliminated the hazard, but failed to do so, his intervening negligence could relieve the motorist of liability to the motorcyclist for the injuries he suffered.  But, there was no basis in the record to

find that the school bus driver was negligent. Indeed, we wrote that "the action of the bus driver in bringing his vehicle to a natural stop was not negligent." *Didier*, at 753. It does not follow that a non-negligent intervening act will break the chain of causation between a prior negligent act and subsequent injuries that proximately result from that act. The Restatement holds that the intervening act must be "wrongful." The non-negligent conduct of an intervening "actor" has no effect on the respective negligences of the plaintiff and the defendant or defendants, which must instead be resolved on comparative negligence principles. *Shinaver v. Szymanski.*

{¶ 52} Our rationale in *Didier* also suffers from another major flaw. We held that the plaintiff motorcyclist was not entitled to a comparative negligence instruction, rejecting the "seductively appealing, but wholly pernicious, 'but for' analysis" in *Fleming* and *Baum*, regarding the issue of probable cause. We wrote: "The <u>legal</u> analysis must focus on the direct <u>per</u> <u>se</u> negligence of the violator of the assured clear distance rule, as distinct from a <u>physical</u> analysis made pursuant to the 'but for' theory." Id. at 754. In other words, the fact that the plaintiff was negligent per se is conclusive of the issue of proximate cause. However, that pronouncement we made in *Didier* is the very view that the Supreme Court rejected in *Smiddy* when

it wrote:

{¶ 53} "Although we hold that appellee's decedent was negligent per se, such holding does not mean that his negligence was the sole proximate cause, or even a proximate cause, of the collision that resulted in his death. Construing the evidence most favorably toward appellee, we hold that reasonable minds could differ as to the proximate cause(s) of the collision. Similarly, the issue of comparative negligence is for the jury if it finds that Hesketh [a motorist who had stopped and was struck by Smiddy's vehicle] was negligent and that the negligence of both Hesketh and Smiddy were proximate causes of the accident." Id., at 40 (internal citations omitted.)

{¶ 54} We now believe that our holding in *Didier* was incorrect. There was no intervening wrongful force between the prior negligence of the defendant motorist whose vehicle crossed the center line of the road and the plaintiff motorcyclist's subsequent assured clear distance violation that could or should have prevented the injuries the plaintiff motorcyclist suffered when he struck the school bus. The plaintiff's assured clear distance violation was negligence per se, but its effect on the liability of the other motorist should have been determined on the basis of comparative negligence principles, and was not a basis to find the motorcyclist's negligence per se was the sole proximate cause

of the accident.  The practical effect of that finding was to hold that, as a matter of law, any prior negligent act is too remote to be a proximate cause of injuries when any other concurrent negligence occurs.  That outcome confounds the basic rule that concurrent negligences may result in joint liabilities for both tortfeasors when each is a proximate cause of injuries.  *Berdyck v. Shinde*.  Therefore, our holding in *Didier* will be limited to its facts.

{¶ 55} In the present case, the trial court carefully analyzed the facts under the rule of *Didier*.  We cannot fault the court's faithful adherence to our flawed precedent.  But, being flawed, *Didier* misled the trial court to grant summary judgment in favor of Unlimited Freight, Inc.

{¶ 56} The trial court correctly found that Plaintiff Crosby's assured clear distance violation was negligence per se.  However, that finding is not conclusive of the issue of proximate cause. *Smiddy*.  As in *Fleming*, reasonable minds could find that Radenko, the driver of the Unlimited Freight, Inc.'s tractor-trailer, would anticipate that though a vehicle immediately behind the point where he began to reenter the lane of travel would be able to stop to avoid a collision, other vehicles in the same line of travel would not be able to do so.  As in *Baum*, reasonable minds could conclude that the chain of events set in motion by the acts or omissions

of Radenko, the driver of Unlimited Freight's vehicle, unfolded in rapid succession in a continuous and unbroken fashion, with a result that the causal connection between that act or omission and Crosby's injuries was not broken by Crosby's negligence per se, and that she and the driver of Unlimited Freight, Inc.'s tractor-trailer were concurrent tortfeasors. In that circumstance, the effect of their concurrent negligence on the liability of Unlimited Freight, Inc. for Crosby's injuries must be resolved by a jury on comparative negligence principles. R.C. 2315.33; *Smiddy v. The Wedding Party, Inc.* Therefore, Defendants Unlimited Freight, Inc., and Radenko were not entitled to summary judgment.

{¶ 57} The assignment of error is sustained. The judgment of the trial court will be reversed and the cause will be remanded for further proceedings consistent with our decision.

FROELICH, J., concurs.

HALL, J., dissenting:

{¶ 58} I am of the opinion that granting summary judgment in favor of defendant Radenko was correct. I agree with the majority (and the trial court) that Plaintiff was negligent per se for her inability to stop within the assured clear distance. But I disagree with its analysis of the proximate cause of Plaintiff's collision

with Radenko's truck. I think that the sole proximate cause of the collision was Plaintiff's own negligence. For this reason, I would affirm.

{¶ 59} The pertinent facts are not in dispute:

{¶ 60} "There are four vehicles relevant to the instant action, which were traveling[1] east in the following progression: Radenko's tractor-trailer ('Radenko's truck'), the automobile following Radenko's truck driven by witness June Owens ('Owens'), a semi-truck following June Owens (the Court will occasionally refer to said semi-truck as 'vehicle three'), and the automobile driven by Plaintiff-Crosby ('Plaintiff-Crosby's car'). Owens, the following truck, and Plaintiff-Crosby entered Interstate 70, merged with traffic, and proceeded traveling east in the right hand lane, each following the other in the aforementioned progression. Owens was forced to come to an abrupt stop, because Radenko's truck was stopped in the right lane.[2,3] Owens was able

---

[1]Radenko's truck was stopped at a point ahead of the three following vehicles on eastbound Interstate 70.

[2]The evidence is unclear as to the exact positioning of Radenko's truck in the right hand lane of Interstate 70. However, it is undisputed that Radenko's truck or a portion of his truck was stopped in the traveling lanes of the interstate such that June Owens was forced to stop.

[3]The only evidence as to the distance traveled in between entering the highway and encountering Radenko's truck is the deposition testimony of Plaintiff-Crosby, who stated the

to stop successfully behind Radenko's truck without incident. Owens stated that she immediately looked into her rearview mirror, because she was concerned about the semi-truck behind her. The semi-truck following Owens stopped successfully behind her. When Owens turned her attention back to Radenko's truck, it appeared that Radenko 'backed up a tiny bit' in the time period in which Owens was observing the truck behind her. It was at this point that Plaintiff-Crosby came up behind vehicle three. Plaintiff-Crosby stated in her deposition that when vehicle three stopped in front of her, she lost control of the car,[4] she swerved to the left, into the left lane, into the gravel and grass of the median, then tried to turn right, blacked out, and after regaining consciousness realized she had hit Radenko's truck. Plaintiff-Crosby stated that the truck she collided with (Radenko's truck), was not the truck that stopped in front of her (vehicle three/semi-truck following June Owens' car).

{¶ 61} September 23, 2010 Decision, Order, and Entry, etc., p.3-4 (Internal citations omitted.).

---

distance to be approximately one mile.  Plaintiff-Crosby Depo at 19:10.

[4]A: I could not maintain my vehicle after I saw the semi slam on its brakes.

Q: [D]id you lost control of your vehicle . . .

{¶ 62} Plaintiff's failure to stop safely behind vehicle three (as vehicle three had done behind vehicle two, and as vehicle two had done behind Radenko's truck) was the result of her own negligence. Plaintiff then negligently swerved into the left lane and into the median, and then she overcorrected to the right and swerved into the right lane, colliding with Radenko's truck. The collision cannot be attributed to anyone else. If Plaintiff had not swerved and instead collided with vehicle three, the required holding, under this Court's decision in *Didier v. Johns* (1996), 114 Ohio App. 3d 746, and subsequent, identical holding in *Daniels v. Williamson* (July 3, 1997), Montgomery App. No. 96-CA-146, would be that Plaintiff's negligence was the sole proximate cause of the collision. The situation here is indistinguishable: the fact that both Owens, vehicle two, and vehicle three stopped safely behind Radenko's truck is competent proof that it was not Radenko's negligence that caused Plaintiff to swerve. Owens and vehicle three broke the causal chain.

{¶ 63} Nor were Owens or vehicle three the cause. As Judge Young stated in *Didier*, "Are we to direct all rear-end collisions into an endless search of discovery for some tint of negligence down the road, no matter how far removed?" *Didier*, at 754. I would add,

---

A: Yes.

"Do we extend potential liability to the third or fourth vehicles, or maybe the tenth, or perhaps even the twentieth?" In its analysis the majority revisits *Baum v. Augenstein* (1983), 10 Ohio App.3d 106; *Grange Mut. Cas. Co. v. Fleming* (1982), 8 Ohio App.3d 164; and *Shinaver v. Szymanski* (1984), 14 Ohio St.3d 51. Each of these cases was considered in *Didier* and either rejected as unsound (*Baum* and *Fleming*) or distinguished factually (*Shinaver*). The same should be done here for the same reasons.

{¶ 64} The assured clear distance statute is perhaps one of the strictest rules of the road, but it needs to be. It may be captivating to throw all potentially responsible parties into the mix and let a jury sort it out. But, consistent with this Court's precedent, I would hold that once a non-negligent driver breaks the causal chain by bringing their vehicle to a lawful stop, and that vehicle remains in the line of travel, the failure of a trailing vehicle to comply with the assured-clear-distance statute is caused solely by the trailing driver's negligence.

{¶ 65} But another, perhaps more compelling, reason exists to affirm the trial court's grant of summary judgment. This reason makes the intervening/superceding cause analysis unnecessary. As the majority, and the trial court, point out, because Plaintiff was negligent by failing to stop in the assured clear distance, she cannot assert the "sudden emergency" doctrine to justify her

subsequent loss of control. Therefore, the only reason that Plaintiff collided with Radenko's truck was her own negligence—first in swerving left to avoid hitting vehicle three, then losing control into the median, and then in overcorrecting to the right. The situation is no different than if Plaintiff had been traveling all along in the left lane, outside the lane of travel of the stopping vehicles, when, losing control, she swerved left into the median and then overcorrected right into the right lane and Radenko's truck. In that situation, Plaintiff's own negligence undoubtedly would be considered the sole cause of the collision. The same is true in this case since Plaintiff cannot justify her failure to stop, and her subsequent actions, by claiming a sudden emergency. The sole proximate cause of the plaintiff's movement to the right, and into Radenko's truck, was her negligent overcorrecting, precipitated by her negligent driving off the left side of the roadway.

{¶ 66} Accordingly, I would affirm the trial court's decision to grant summary judgment in favor of defendant Radenko.

. . . . . . . . .

Copies mailed to:

Timothy S. Chappars, Esq.
Patrick McCaffrey, Esq.
Audrey E. Varwig, Esq.
Hon. Dennis J. Langer